[Civ. No. 23948.   First Dist., Div. Three.   Feb. 23, 1968.]

CLARK'S FORK RECLAMATION DISTRICT #2069, Plaintiff and Respondent, v. DOYLE JOHNS, Defendant and Appellant.

Wilmer W. Morse for Defendant and Appellant.

Charles W. Jennings for Plaintiff and Respondent.

DRAPER, P. J.—This is an action (Wat. Code, §§ 50440, 50979; Code Civ. Proc., §§ 860-870) to determine the validity of the proceedings for the organization of plaintiff district, the proceedings of its governing board authorizing execution of two contracts which are the subject of dispute, and the provisions of those contracts. The two contracts in issue are between the United States, on the one hand, and some 24 districts and mutual water companies which have rights to divert waters of the Kings River, on which the United States has constructed the Pine Flat Dam and Reservoir for flood control, irrigation and other water conservation purposes. The dam is a part of the Central Valley Project. The action was brought against "all persons interested" (Code Civ. Proc., § 861.1). Only appellant Johns contested the action. His demurrer to the complaint was overruled. He answered, alleging that he owns land within plaintiff district which is riparian to the Kings River, and is an assessee of the district. Plaintiff moved for judgment on the pleadings and, after extensive memoranda were submitted by both sides, the motion was granted. Johns appeals.

Appellant's contention here, as in the trial court, is that the complaint states no cause of action because the two contracts sought to be validated contravene the so-called "160-acre limitation" established by the federal reclamation acts

upon users of water from federally financed projects. He also contends that they violate the federal statutory requirement for repayment of federal costs within 40 years. Each of these issues obviously is one of federal law. Appellant suggests no violation of California statutory or decisional law.

But the basic issues now urged by appellant had, before execution of the contracts before us, been raised by water users similarly situated. Those disputes, if not resolved, could result in a costly impasse which would affect the whole purpose of the construction project. The waters stored by a dam built with federal funds can serve a major element of their public purpose only if used upon the lands to be served by them. Repayment to the United States is to be made by charges for water supplied to users. All would suffer if the stored water were not usefully distributed pending determination of the basic disputes. The obvious purpose of the present contracts was to permit utilization of the stored waters pending judicial determination, preserving the rights ultimately to be awarded by that determination. To meet the same problem in an earlier similar dispute, interim agreements like those now before us had been executed by the United States and Tulare Lake Canal Co., and the United States had commenced an action in a federal court for determination of the issues in dispute. The contracts before us, as well as others of like nature with other users, recite these facts. They preserve the federal interest by providing for disposition of lands in excess of the acreage limitation, but expressly make such provisions dependent upon a judgment favorable to the government in the Tulare Lake litigation, which directly involves the validity of like interim contracts.

The contracts also require each contracting district promptly to institute proceedings in the courts of California for "the judicial examination, approval and confirmation of the proceedings had for [its] organization," "the proceedings of [its] governing board . . . leading up to and including the making of this . . . agreement and the validity of the provisions thereof." This provision is required by federal statute (43 U.S.C.A. § 423e).

It is completely apparent that the parties to the contracts before us, as well as to a number of other like contracts, intended that issues of federal reclamation law should abide determination of the already pending federal court litigation against Tulare Lake Canal Co., and that issues of state law, principally the validity of organization of the several districts

and the adequacy of their execution of the agreements, be determined by state court validation proceedings.

■ We do not suggest that mere agreement of the parties can deprive our courts of jurisdiction. Nor does the earlier filing of the federal court action bar jurisdiction of the courts of the state (*Simmons* v. *Superior Court*, 96 Cal.App.2d 119, 132 [214 P.2d 844, 19 A.L.R.2d 288]; see *Thomson* v. *Continental Ins. Co.*, 66 Cal.2d 738 [59 Cal.Rptr. 101, 427 P.2d 765]). But the prior filing of that action does raise questions of comity calling for exercise of a circumspect discretion by the state court in which the later action is commenced (*Simmons* v. *Superior Court, supra*; and see *Farmland Irr. Co.* v. *Dopplmaier*, 48 Cal.2d 208 [308 P.2d 732, 66 A.L.R.2d 590]; as to federal abstention, see *Pennsylvania* v. *Williams*, 294 U.S. 176 [79 L.Ed. 841, 55 S.Ct. 380, 96 A.L.R. 1166]; *Penn etc. Co.* v. *Pennsylvania*, 294 U.S. 189 [79 L.Ed. 850, 55 S.Ct. 386]; *Railroad Com.* v. *Pullman Co.*, 312 U.S. 496 [85 L.Ed. 971, 61 S.Ct. 643]).

A number of elements in this case strongly suggest the advisability of restraint by California courts. The issues here raised turn wholly on questions of federal law. Ultimate decision as to application in this state of the acreage limitations rests with the federal court system (*Ivanhoe Irr. Dist.* v. *McCracken*, 357 U.S. 275 [2 L.Ed.2d 1313, 78 S.Ct. 1174], reversing *Ivanhoe Irr. Dist.* v. *All Parties*, 47 Cal.2d 597 [306 P.2d 824]). The parties whose rights and interests are at stake include the United States, all 24 districts which have signed the contracts now before us, and the many districts which have executed similar separate contracts with the United States covering identical issues. Yet the broad federal questions affecting so many parties are here urged by a single owner of land within the boundaries of one district of the vast area affected by similar projects and contracts. The contracts make clear that the United States has, and in the pending federal court litigation asserts, a strong interest in full application of the 160-acre limitation. Yet the United States is not a litigant here. The agreement reserving the federal issues to the federal litigation is significant as a probable cause of the abstention of the United States and the many other interested parties from this litigation. Moreover, intricate issues are here presented solely upon general and conclusory pleadings on both sides, without the benefit of evidence upon factual issues which may well arise upon detailed considera-

tion of the application of these contracts to the widely varying interests which will be substantially affected.

■ The factors to be considered in determining whether to stay the instant action have been summarized (*Farmland Irr. Co.* v. *Dopplmaier, supra*, 48 Cal.2d 208, 215). The problem here presented can best be determined in the pending federal action, not only because the issues argued turn wholly on federal law, but also because one of the contracting principals, the United States, is absent from this litigation but participating fully in the already pending action. The importance of discouraging multiple litigation is apparent, particularly since actions involving varying applications of the contracts could be brought in any of the many counties of the large area affected by comparable contracts. We conclude that the only reasonable exercise of discretion is to withhold state court intervention.

■ We recognize that a stay of proceedings is not a matter of right, but of discretion, a question normally for the trial court (*Farmland Irr. Co.* v. *Dopplmaier, supra,* 48 Cal.2d 208, 215). But when all facts relevant to the abstention issue are before the appellate court, as they are on the face of the record here, and leave room for but one reasonable exercise of discretion, it is appropriate for that court to act directly (see *Simmons* v. *Superior Court, supra,* 96 Cal.App. 2d 119). For reasons of their own, not disclosed to us, the two parties who here dispute issues of such widespread application did not raise the issue of state abstention in the trial court. As we have shown, the discretion of that court, if invoked, could be exercised in but one way.

Once the issues in the *Tulare Lake Canal Co.* case are finally determined by the federal courts, there will remain no federal issues for determination in this action. Thus a mere stay pending determination of the federal issues would be pointless.

Insofar as state law is involved, appellant concedes the propriety of the judgment. Confirmation of the validity of the proceedings for formation of plaintiff district and for the execution of this agreement clearly are matters of state law. It is only the provision for confirmation of the validity of the two contracts and "each and all of the provisions thereof" which are too broad, and thus give rise to appellant's assertion that they violate federal statutes. The contracts themselves strongly indicate that this validation proceeding is to

determine issues of state law. The judgment can readily be amended to limit it to those issues.

The judgment is modified by striking out the period following the last sentence and adding ''insofar as the law of California applies.'' As so modified, the judgment is affirmed. Each party shall bear his own costs on appeal.

Salsman, J., and Brown (H. C.), J., concurred.