Filed 2/3/26  Carrillo v. Modesto City Schools CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| ALFREDO CARRILLO et al., | F089135 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. CV-23-006610) |
| MODESTO CITY SCHOOLS, | **OPINION** |
| Defendant and Respondent. | |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Stanislaus County.  John D. Freeland, Judge.

Alfredo Carrillo, in pro. per., and for Plaintiffs and Appellants.

Heyer Gutierrez, Marcella L. Gutierrez and Tilman A. Heyer for Defendant and Respondent.

-ooOoo-

---

[*] Before Detjen, Acting P. J., Peña, J. and Meehan, J.

Plaintiffs Alfredo Carrillo, Silvia Lara, and Ashanti Carrillo[1]—proceeding in pro. per.—filed a lawsuit against defendant Modesto City Schools, inter alios. In turn, Modesto City Schools demurred "on the grounds that there is a defect of parties, the pleading does not state facts sufficient to support the causes of action, and the pleading is uncertain." The Stanislaus County Superior Court issued a tentative ruling sustaining the demurrer without leave to amend. On October 11, 2024, following a hearing, the tentative ruling was confirmed in an unsigned minute order. A formal order was signed January 3, 2025, and judgment was entered January 6, 2025. Plaintiffs filed the instant appeal.[2]

For the reasons set forth below, we conclude the superior court properly sustained the demurrer without leave to amend and affirm the judgment.

## **BACKGROUND**[3]

---

[1] In this opinion, we refer to individual plaintiffs by their given names. No disrespect is intended.

[2] Plaintiffs appeal from the October 11, 2024 minute order. This minute order is "appealable even though it is not a formal, signed order" because it "does not provide for or require that a written order be prepared for entry." (*Walton v. Mueller* (2009) 180 Cal.App.4th 161, 167.) "Where a minute order does not direct or otherwise require a further or formal order, appeal lies from the minute order despite the fact that a formal order or formal judgment is subsequently entered." (*In re Marriage of Wood* (1983) 141 Cal.App.3d 671, 677.)

Even assuming, arguendo, the October 11, 2024 minute order is not appealable, we may nonetheless treat plaintiffs' appeal from the minute order as an appeal from a judgment of dismissal to promote judicial economy as well as prevent delay. (See *Nowlon v. Koram Ins. Center, Inc.* (1991) 1 Cal.App.4th 1437, 1440–1441; *People ex rel. Rominger v. County of Trinity* (1983) 147 Cal.App.3d 655, 658.)

[3] "Because this appeal arises from a dismissal following a demurrer, we rely on [the operative] complaint . . . for a summary of the factual background. We accept as true all properly pleaded allegations without concern for proof problems." (*Gordon v. Law Offices of Aguirre & Meyer* (1999) 70 Cal.App.4th 972, 975, fn. 2.)

2.

## I.  Contents of the operative complaint[4]

Under the heading "**STATEMENT OF THE CASE**," plaintiffs alleged the following:

".  All districts have been abusing their power causing irreparable damage to the entire family.

".  In 2012 Chris was physically abused by a teacher at Barron Park Elementary School in Palo Alto on various parts of his body.

".  Ashanti suffered attempted sexual abuse in 2017 by some students at the high school in Lathrop, Ca.

".  Ashanti was discriminated against in 2021 by Mr. Wood, as Mr. Wood deprived Ashanti of graduating on stage.

".  Dayanara suffered discrimination and intentional damage at Evelyn Henshaw School in 2022, as Dayanara coughed a little and immediately one of the teachers took her out of class and exposed her to the cold weather, putting her at risk of death due to pneumonia.

".  Dayanara was verbally abused by an employee and the yard duty, as she was not allowed to enter the bathroom and, on another occasion, the same employee or yard duty yelled at her loudly causing Dayanara to be afraid and distrustful of returning to class.

".  Chris suffered harassment or bullying by some students in the year 2023 at the Thomas Downey school, which the district apparently investigated further, according to the results of said investigation, no fault was found on the part of anyone.

".  As a parent, [Alfredo] was defamed in a humiliating and intimidating manner, which [Silvia] and [Alfredo] have been persecuted by all school districts for exercising [their] rights and those of [their] children.

".  [Plaintiffs] have also been sued by the SARB[5] agency because Chris and Dayanara have not attended to the school properly, however,

---

[4] Plaintiffs filed the initial complaint on November 13, 2023; an amended complaint on December 11, 2023; a second amended complaint on March 13, 2024; and a third amended complaint, i.e., the operative complaint, on August 19, 2024.

[5] "SARB" stands for "school attendance review board."  (See Ed. Code, § 48321.)

these actions are discriminatory in nature and retaliatory for exercising [their] rights.

". Each school district has been aware of [Alfredo's] children's illnesses, but they have been completely ignoring it.

". Since 2015, they have been receiving medical reports recommending home schooling for Chris for Chris to recover little by little, however all school districts have been ignoring these recommendations causing Chris to have excessive academic instruction along with anxiety and depression and distrust of the school system.

". Because of all the criminal and improper actions, [plaintiffs] have not enjoyed life in a normal way, and [plaintiffs] have spent a lot of time and money attending therapies from 2012 to the present 2024.

". Currently, Dayanara, Chris and Ashanti continue to attend mental therapies, since none of them have managed to excel in academic or social life.

". Precisely today, [Alfredo] received a call from the Downey Thomas school today on August 13[, 2024,] which left [him] a voice mail where they claim that [his] children did not attend classes.

". [Alfredo] previously reported these harassing actions to the Modesto Police, but they have not done anything about it.

". [Alfredo] recently sent a complaint letter dated August 10[, 2024], where [he] request[ed] that Chris be home schooled with the sole purpose of catching up on missed classes.

"Also, in the same letter [Alfredo] respectfully asked them to stop bothering [him] with calls and emails, but they have not responded yet."

Under the heading "**POINTS AND AUTHORITIES**," plaintiffs added:

". [A]ccording to the 1983 federal law,[6] abuse of power against individuals exercising their constitutional rights is prohibited.

". [E]vidently all school districts have been repeatedly abusing their power against [the] entire family.

---

[6] Plaintiffs are alluding to title 42 United States Code section 1983. In this opinion, we will refer to this statute as "section 1983."

". [T]he school district is required to instruct children with extraordinary disabilities under the IDEA[7] and Section 504 of the Rehabilitation Act of 1973[8] with the help of an aide and to receive therapies at home.

". [T]he duty of each school district to provide an environment free of noise and distractions for children with special disabilities according to (LRE[9]) (34C.F.R.Sec. 104.35)

". [E]very action by all school districts has been with the intent to harm and they have succeeded.

". [H]ome placement with instruction based on an individualized determination

". Since it is an obligation or duty on the part of the school that no student is left without academic studies.

". Chris currently retains some diagnoses issued by professional doctors' mental therapists.

". [M]oderate intellectual disability-major depressive disorder-post-traumatic stress disorder among others not mentioned here, these types of diagnoses prevent Chris from attending school regularly, not to mention that he is also afraid to enter school for fear of being physically and verbally abused by school employees or students.

". Chris has a history of physical and verbal abuse from 2012 to the present.

". [A]ccording to the [section] 504 plans, all children with special disabilities must be instructed in remedial instructional classes, support classes and after school and in graduation ceremonies. [¶] . . . [¶]

". Therefore, civil rights were violated because each school district committed actions knowingly or with knowledge that would cause permanent emotional damage to each [member] of [the] family.

---

[7] "IDEA" refers to the federal Individuals with Disabilities Education Act (20 U.S.C. § 1400 et seq.).

[8] In this opinion, we will refer to this statute as "section 504."

[9] "LRE" stands for "least restrictive environment." (See 20 U.S.C. § 1412(a)(5).)

"   . Also in the past, in one of the meetings [Alfredo] had with the IEP[10] team, [he] verbally and by email requested that they implement a program where Chris could continue with his academic studies.  However, they flatly refused, claiming that this program would not be good for Chris.

"   . The action that the IEP took was intentional because the actions violated the constitutional rights of [Alfredo's] children."

Under the heading "**CONCLUSION**," plaintiffs asserted:

"In summary, under section 1983 the employees of each district are fully liable for violating constitutional and statutory rights.

"1.  the school employees knew or reasonably should have known that the actions they took violated the constitutional rights of the plaintiffs.

"2.  the school employees took actions with malicious intent to cause hardship or injury to the plaintiffs."

Plaintiffs identified seven causes of action:  (1) assault; (2) negligence; (3) discrimination; (4) negligent hiring, retention, and supervision; (5) intentional infliction of emotional distress; (6) removal of the action from state court to federal court; and (7) deprivation of federal rights under color of state law.

In connection with the first cause of action ("**Assault Against Plaintiff**"), plaintiffs recapped:  "In or about August 2012, Chris was physically assaulted while attending Barron Park Elementary School, where he was a minor at the time and had an IEP; there was never any justice in that matter, and it was never brought to court."

In connection with the second cause of action ("**Negligence against all Plaintiffs**"), plaintiffs stated:  "Plaintiffs . . . have an affirmative legal duty to provide protective care to Defendants against unreasonable risks of harm."

In connection with the third cause of action ("**Discrimination against all Plaintiffs**"), plaintiffs claimed defendants violated section 504 as well as Education Code sections 201 and 220.  They commented:

---

**10** "IEP" stands for "individualized education program."  (See 20 U.S.C. §§ 1401(14), 1414(d).)

"Discrimination occurs when everyone has knowledge of illnesses and dares to make them feel bad with the intention of making the emotional state of students worse, since discrimination is not welcome and is prohibited by federal and state laws."

In connection with the fourth cause of action ("**Negligence in Hiring, Supervising, and** Retaining Staff Against Plaintiff"), plaintiffs alleged:

"All employees of MODESTO CITY SCHOOL[S] should have known that they were incompetent and incapable and that their incompetence and incapacity created a particular risk to others, including Plaintiffs. Because of their incompetence, Plaintiffs are now suffering psychological damage and have been spending a lot of money in various areas due to Defendants' illegal actions."

In connection with the fifth cause of action ("**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**"), plaintiffs alleged:

"Defendants acted with the intention of causing or reckless disregard of the probability of causing, emotional distress when Defendants displayed aggressive behavior toward Plaintiffs in a harmful manner such that it reasonable appeared that Defendants carried out a threat proceeded to physically assault Plaintiffs such that It caused Plaintiffs to sustain phycological [*sic*] injuries and damages.

"**Maria Lobato** is an employee of the SARB agency, and she is one of those who has been aggressively opposing in every meeting [plaintiffs] have had in the past, she has opposed the school district implementing or having Chris taught at home.

"Maria Lobato has even been telling [plaintiffs] that the medical reports are not sufficient in this matter and that said reports will be ignored.

"[Alfredo] was also criminally defamed in a humiliating manner by one of the employees of Evylin Henshaw's school and so far, they have stopped bothering [plaintiffs] with calls and emails and text messages every day."

In connection with the sixth cause of action ("***MOTION TO REMOVE LAWSUIT TO FEDERAL COURT***"), plaintiffs remarked: "It is possible that the federal court has jurisdiction in this lawsuit, and not the state court. [¶] . . . The final

decision is subject to the will of the court, which will make a fair and effective decision that does not affect this lawsuit."

In connection with the seventh cause of action, plaintiffs alleged:

"1. Under Section 1983, school district employees may be sued in their personal capacity on the grounds that they belong to a public entity.

"2. [S]ince the actions committed by each of the defendants were in an aggressive and intimidating manner using power.

"3. [S]ince they violated the civil rights of each of the plaintiffs. [¶] . . . [¶]

". . . Starting in or around 2021, the Modesto City School districts have initiated harassment, discrimination, intestinal [*sic*] harm, defamation and neglect against Plaintiffs, the minor children and the entire family, causing each of them to distrust and fear and refuse to attend school. The Children are victims of physical child abuse and sexual harassment by employees and/or teachers at the school and the entire family suffers from psychological and emotional trauma."

With respect to each cause of action, plaintiffs sought general and special damages "in a sum according to proof at the time of trial."

## II.    Demurrer

On September 16, 2024, Modesto City Schools filed its demurrer. It contended, among other things: (1) "[t]he First through Fifth Causes of Action fail to state facts sufficient to constitute a cause of action against Defendant because Plaintiffs have not complied with the Government Claims Act"; (2) "[t]he Third Cause of Action" "fail[s] to plead sufficient facts to support a claim of discrimination"; (3) the complaint "is uncertain, ambiguous, and unintelligible"; (4) the complaint "has a defect of parties, in that indispensable parties have not been joined in this action, namely, 'Dayanara' and 'Chris' "; and (5) "the Sixth Cause of Action, removal to federal court is not a cause of action."

8.

## III. Ruling

The superior court issued a tentative ruling sustaining the demurrer without leave to amend. It found: (1) the allegations of the complaint "remain uncertain to the point of unintelligibility"; (2) "the pleading fails to allege compliance with the Government Claims Act"; (3) the pleading "fails to state sufficient factual allegations to support the claims asserted"; and (4) the complaint "appears to suffer from a misjoinder of indispensable parties, since Chris and Dayanara have been omitted as named Plaintiffs yet are the subject of several of the allegations in the pleading." The court also denied leave to amend because "the instant demurrer represents [Modesto City School]'s third successful challenge to the sufficiency of the pleading in this action and Plaintiffs have not demonstrated that a reasonable possibility exists for them to cure the above-identified deficiencies."

A hearing on the demurrer was held October 11, 2024. Thereafter, the tentative ruling was confirmed in an unsigned minute order. A formal order was signed January 3, 2025, and judgment was entered January 6, 2025.

## DISCUSSION

## I. Standard of review

"A demurrer tests the legal sufficiency of the complaint. [Citation.] On appeal from a judgment of dismissal following an order sustaining a demurrer, we examine the complaint de novo in order to ascertain 'whether it alleges facts sufficient to state a cause of action under any legal theory, such facts being assumed true for this purpose.' [Citation.] We give the complaint a reasonable interpretation, reading it as a whole and viewing its parts in context. [Citations.] We assume the truth of the properly pleaded factual allegations, facts that can be reasonably inferred from those pleaded, and facts of which judicial notice can be taken. [Citation.] But we do not assume the truth of pleaded contentions and legal conclusions. [Citations.] And we may disregard allegations which are contrary to law or to a fact of which judicial notice may be taken. [Citation.]" (*In re*

9.

*Social Services Payment Cases* (2008) 166 Cal.App.4th 1249, 1263.) "We review the trial court's denial of leave to amend for an abuse of discretion. [Citations.] 'When a demurrer is sustained without leave to amend, we determine whether there is a reasonable probability that the defect can be cured by amendment. [Citation.]' [Citation.]" (*Ibid.*) "Appellants bear the burden of demonstrating the trial court erred in sustaining the demurrer or abused its discretion in denying leave to amend." (*Ibid.*)

## II. Analysis

### a. *The complaint did not state sufficient facts with respect to each cause of action therein.*

"The party against whom a complaint or cross-complaint has been filed may object, by demurrer . . . , to the pleading on . . . the . . . ground[] . . . [¶] . . . [¶] . . . [t]he pleading does not state facts sufficient to constitute a cause of action." (Code Civ. Proc., § 430.10, subd. (e).) "To show entitlement to reversal the plaintiff must show that the complaint alleged facts sufficient to establish every element of each cause of action. If the plaintiff failed to plead . . . any essential element of a particular cause of action, [the appellate] court should uphold the sustaining of the demurrers." (*Los Altos Golf & Country Club v. County of Santa Clara* (2008) 165 Cal.App.4th 198, 203.)

#### i. Government Claims Act (Gov. Code, § 810 et seq.)

"Enacted in 1963, the Government Claims Act . . . is a comprehensive statutory scheme governing the liabilities and immunities of public entities and public employees for torts." (*Quigley v. Garden Valley Fire Protection Dist.* (2019) 7 Cal.5th 798, 803.) Under the Government Claims Act, subject to some exceptions (see Gov. Code, § 905, subds. (a)–(p)), " 'all claims for money or damages against local public entities' [must] be presented to the responsible public entity before a lawsuit is filed" (*City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 734, fn. omitted, quoting Gov. Code, § 905). " '[A] suit for "money or damages" includes all actions where the plaintiff is seeking monetary relief, regardless of whether the action is founded in " 'tort, contract or some

10.

other theory.' " ' [Citation.]" (*California School Employees Assn. v. Governing Bd. of South Orange County Community College Dist.* (2004) 124 Cal.App.4th 574, 589.) " '[N]o suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented . . . until a written claim therefor has been presented to the public entity and has been acted upon . . . or has been deemed to have been rejected . . . .' " (*City of Stockton v. Superior Court*, *supra*, at p. 738, quoting Gov. Code, § 945.4.) "Compliance with the claim requirement is a condition precedent to suing the public entity. 'Complaints that do not allege facts demonstrating either that a claim was timely presented or that compliance with the claims statute is excused are subject to a general demurrer for not stating facts sufficient to constitute a cause of action.' [Citation.]" (*Rubenstein v. Doe No. 1* (2017) 3 Cal.5th 903, 906.)[11]

Here, plaintiffs raised causes of action against Modesto City Schools for assault; negligence; discrimination in violation of Education Code sections 201 and 220; negligent hiring, retention, and supervision; and intentional infliction of emotional distress. For each of these causes of action, they sought general as well as special damages. However, in their complaint, plaintiffs did not allege any facts demonstrating they presented a written claim to Modesto City Schools or were otherwise exempt from complying with this requirement. Therefore, the demurrer was properly sustained as to these causes of action.

---

[11] The Government Claims Act's claim presentation requirement does not apply to causes of action based on rights under federal law. (See *Lozada v. City and County of San Francisco* (2006) 145 Cal.App.4th 1139, 1153 ["[T]he supremacy clause of the United States Constitution prohibits states from altering or restricting federally created rights."]; see also *California Correctional Peace Officers Assn. v. Virga* (2010) 181 Cal.App.4th 30, 38 ["[S]ection 1983 claims are not subject to the procedural requirement in the [Government] Claims Act that a plaintiff must timely file a claim with a public entity as a prerequisite to later filing an action for damages against the entity."].)

11.

### ii. Section 504

"No otherwise qualified individual with a disability in the United States . . . shall, solely by reasons of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." (29 U.S.C. § 794, subd. (a); see *Barker v. Riverside County Office of Education* (9th Cir. 2009) 584 F.3d 821, 825 [29 U.S.C. § 794 codifies § 504].) "In order to obtain relief under section 504, a plaintiff must show (1) that he is [disabled] within the meaning of the act, (2) that he is 'otherwise qualified' for the services sought, (3) that he was excluded from the services sought 'solely by reason of his [disability],' and (4) that the program in question receives federal financial assistance." (*Dempsey v. Ladd* (9th Cir. 1987) 840 F.2d 638, 640.)

Here, plaintiffs did not plead all essential elements of a section 504 claim, let alone plead specific and nonconclusory facts sufficient to establish these elements. Therefore, the demurrer was properly sustained as to this cause of action.

### iii. Section 1983

"Local governmental entities ' "can be sued directly under [section] 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted . . . ." ' [Citation.] Local governmental entities also can be sued ' "for constitutional deprivations visited pursuant to governmental 'custom.' " ' [Citation.] In addition, ' "[t]he plaintiff must . . . demonstrate that, through its deliberate conduct, the [entity] was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the [governmental] action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the [governmental] action and the deprivation of federal rights." ' [Citation.]" (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1147, italics omitted.)

12.

Here, plaintiffs did not plead all essential elements of a section 1983 claim, let alone plead specific and nonconclusory facts sufficient to establish these elements. Therefore, the demurrer was properly sustained as to federal cause of action.

     iv.  <u>IDEA</u>

"The IDEA requires state education agencies that receive federal funds to monitor the provision of education in the state and to ensure an adequate education for all children, including those with disabilities." (*Doe v. Arizona Dept. of Education* (9th Cir. 1997) 111 F.3d 678, 680.) "Judicial review under the IDEA is ordinarily available only after the plaintiff exhausts administrative remedies." (*Id.* at pp. 680–681, citing 20 U.S.C. § 1415(e)(2).) "[F]ailure to exhaust administrative remedies is a proper basis for demurrer." (*Gupta v. Stanford University* (2004) 124 Cal.App.4th 407, 411.)

Here, plaintiffs mentioned IDEA and indicated Chris was not provided with an adequate education. No cause of action was separately stated and numbered. (Cal. Rules of Court, rule 2.112.) Regardless, plaintiffs did not allege any facts demonstrating they exhausted administrative remedies or were otherwise excused from doing so.

     v.  <u>Removal of civil action from state court to federal court</u>

In their complaint, plaintiffs identified as its sixth cause of action a "***MOTION TO REMOVE LAWSUIT TO FEDERAL COURT***." "A cause of action . . . arises out of an antecedent primary right[12] and corresponding duty and the delict or breach of such primary right and duty by the person on whom the duty rests. 'Of these elements, the primary right and duty and the delict or wrong combined constitute the cause of action in the legal sense of the term . . . .' " (*McKee v. Dodd* (1908) 152 Cal. 637, 641.) Removal—i.e., the transfer of a civil action from state court to federal court based on federal question jurisdiction or diversity jurisdiction (*Hunter v. Philip Morris USA* (2009)

---

**12** "[A] primary right is simply the plaintiff's right to be free from the particular injury suffered." (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 681.)

13.

582 F.3d 1039, 1042)—does not constitute a cause of action.[13]  (See *Whelan v. Wolford* (1958) 164 Cal.App.2d 689, 693 ["Where a complaint absolutely fails to state a cause of action, a demurrer is not necessary[:]  . . . the defect may be raised at any state of the proceeding and in any manner which presents grounds of objection."].)[14, 15]

      b.  *The superior court did not abuse its discretion when it sustained the demurrer without leave to amend.*

"When a demurrer is sustained without leave to amend, this court decides whether a reasonable possibility exists that amendment may cure the defect . . . .  The plaintiff bears the burden of proving there is a reasonable possibility of amendment."  (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43.)  "To satisfy that burden on appeal, a plaintiff 'must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading.'  [Citation.]  The assertion of an abstract right to amend does not satisfy this burden.  [Citation.]  The plaintiff must clearly and specifically set forth the 'applicable substantive law' [citation] and the legal basis for amendment, i.e., the elements of the cause of action and authority for it.  Further, the plaintiff must set forth factual allegations that sufficiently state all required

---

[13] Moreover, plaintiffs' motion was inappropriate:  "[o]nly a defendant can remove a case from state court to federal court."  (*Benitez v. Williams* (2013) 219 Cal.App.4th 270, 275; see 28 U.S.C. § 1441, subd. (a) ["[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."].)

[14] Having decided the demurrer was properly sustained because the complaint did not state facts sufficient to constitute a cause of action, we need not address other grounds for demurrer.  (*Padilla v. City of San Jose* (2022) 78 Cal.App.5th 1073, 1080.)

[15] In their appellate brief, plaintiffs argued the superior court "erred in not granting [their] counterclaim . . . ."  To the extent plaintiffs meant to challenge the court's sustenance of Modesto City School's demurrer, we point out "[t]he dearth of true legal analysis in [their] appellate brief[]" (*Colores v. Board of Trustees* (2003) 105 Cal.App.4th 1293, 1301, fn. 2), which "amounts to a waiver of the demurrer issue" (*ibid.*).

elements of that cause of action.  [Citations.]  Allegations must be factual and specific, not vague or conclusionary.  [Citation.]" (*Id*. at pp. 43–44.)

In their appellate brief, plaintiffs did not explicitly contend the court abused its discretion when it sustained the demurrer without leave to amend.  They reiterated their grievances and reasserted their rights under various state and federal statutes, but they offer "no allegations to support the possibility of amendment and no legal authority showing the viability of new causes of action . . . ." (*Rakestraw v. California Physicians' Service*, *supra*, 81 Cal.App.4th at p. 44.)  Accordingly, we conclude "there is no basis for finding the trial court abused its discretion when it sustained the demurrer without leave to amend." (*Ibid.*)

## DISPOSITION

The judgment of dismissal is affirmed.  Costs on appeal are awarded to defendant and respondent Modesto City Schools.